UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JAMES BENN (92-A-5690),

     Petitioner,

  – against –

CHARLES GREINER, Superintendent,
Sing Sing Correctional Facility,

     Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
IN CLERKS OFFICE
U.S. ⬧ N.Y?
☆ DEC 1 9 2003 ☆
P.M. _____
TIME A.M. _____

MEMORANDUM,
JUDGMENT & ORDER
98-CV-5621 (JBW)
03-MISC-0066 (JBW)

JACK B. WEINSTEIN, Senior District Judge:

  Petitioner was convicted principally of first-degree sodomy and attempted rape. The jury was precluded by the trial court from learning that the complainant, who suffers from chronic schizophrenia, had made numerous unverified allegations of sexual assault against other persons. Because his opportunity to confront his accuser through cross-examination was unduly truncated, petitioner was denied a fair trial.

  Hearings were held in this matter. Counsel, appointed to assist petitioner, was present in person. Petitioner was present telephonically.

  The writ of habeas corpus is granted. This court offers no opinion on whether petitioner committed the charged crimes.

I. Facts and Procedural History

  Petitioner was tried in 1991 for various crimes arising out of the alleged sexual assault of P.M. in a darkened hallway in Brooklyn. According to P.M.'s testimony at trial, she was walking home at night when petitioner approached her and asked if she wanted to smoke crack with him.



When she refused, he grabbed her and kissed her. He put a screwdriver to her throat and threatened her. When she became dizzy and sluggish, petitioner lit a small blow torch—used to cook crack cocaine—and threatened her with it. He banged her head on the ground, opened the zipper of his pants and forced P.M. to put her mouth on his penis. He continued banging her head until she passed out. When P.M. regained consciousness, she found petitioner trying to strip her and then rape her.

On cross-examination, P.M. acknowledged that she suffered from chronic schizophrenia and experienced severe sensory, auditory and visual hallucinations. She had once been hospitalized when she believed that she was possessed by the devil. She suffers from paranoid delusions that unidentified people are following her or attempting to control her. She at times sees spirits or "transparent people." She hears voices in her head and sometimes feels that her throat is being cut and experiences physical pain. P.M. takes antipsychotic medications to lessen the severity of her hallucinations, but the side effects make her nervous and drowsy. She is a convicted pedophile, having pled guilty to the sexual abuse of her four-year-old nephew. She has used cocaine, crack and marijuana in the past, though she testified that she had only "tried" crack cocaine once and had not used any drugs since 1987.

Three prosecution witnesses testified that they walked by the doorway where the incident took place and saw a flame, which they assumed indicated that the individuals there were smoking crack cocaine. They left, but the brother of two of the three drove to the scene to chase the drug users away. His sisters and their friend observed him doing so. He shined his headlights into the hallway, saying, "Why don't you stop doing that shit in here." He heard P.M. say "Help, Help" faintly and saw petitioner attempt to pull P.M.'s pants down while the two were

2

standing upright. Trial Tr. at 51. He stated that he did not see petitioner raping her. He told

petitioner to let her go and, when petitioner refused, swung a club at him. Petitioner ran away

but was chased down and caught.

The civilian witnesses heard P.M. scream, "Please help me. He is trying to rape me,"

when the headlights were flashed on the doorway. *Id.* at 15, 28. They saw petitioner dragging

P.M. One testified that P.M. was "beaten up bad," with "a lot of blood" and "leaves in her hair."

*Id.* at 16. Another testified that P.M. was badly beaten, bruised and bloody, with "old leaves in

her hair like she had been thrown on the floor and dragged around a couple of times." *Id.* at 110.

P.M.'s underwear and pants were described as down at her ankles, with one pant leg on and one

off.

A police officer who arrived on the scene testified that P.M. was somewhat hysterical and

that she had bruises on her face. Photographs taken at the scene were lost.

The physician who examined P.M. when she was taken to the hospital after the incident

testified that one of her eyelids was swollen closed and her cheek was swollen and red, with areas

of bluish discoloration. Her "whole face was greatly swollen." *Id.* at 130. P.M. had two

abrasions on her knees, consistent with being dragged. She had many scratch marks across the

neck, with fresh clotted blood. She did not appear to be under the influence of narcotics because

her eyes were not dilated. In conclusion, the doctor stated:

> She was brutally beaten up. Do I have to watch my language or—she had
> the hell beaten out of her, literally. Her whole left side of her face was grossly
> swollen, her neck was all scratched and she had been dragged. Her head had been
> pummeled one way or the [ot]her. Her head was banged on the ground or she was
> hit with something hard. The person really brutally beat her up savagely and it
> wasn't just once or twice, but multiple times.

3

*Id.* at 134.

Petitioner testified in his own defense. He averred that P.M. had asked him to purchase some crack for her. He bought six vials, which they began to smoke together. Petitioner suggested they go to a motel, but P.M. said they could go to her place. They went to a doorway to continue smoking the crack and then a car pulled up, with a man emerging from it and shouting, "What are you doing?" Petitioner decided to leave and pulled P.M.'s hand, but she fell. A man then began to chase petitioner, and fearful he began to run. At trial, petitioner denied striking P.M., stripping her or choking her. He said that at most he may have kissed her.

On cross-examination, petitioner admitted that he had previously been convicted of attempted sexual assault in 1983 and of harassing his wife in 1986.

The jury did not learn of several other accusations of sexual abuse made by P.M. both before and after the incident in question. Prior to P.M.'s testimony, the prosecution made an application pursuant to section 60.42 of the New York Criminal Procedure Law—the rape shield law designed to protect complainants from the embarrassment of revealing their prior sexual history in public. She sought to prevent cross-examination "about any other or prior sexual experience" by P.M., noting that "in the records that we received there's some statements about the complainant being sexually assaulted in the past by family members." Trial Tr. at 113. In response, defense counsel argued that he believed the allegations of previous sexual assault made by P.M. were false, and that P.M. had "made a similar allegation about someone else later the same year and she's also made similar allegations as to her father, her uncles and her cousins. And I think it shows a history and a pattern of making things up." *Id.* at 114.

The court concluded that section 60.42 was not applicable, since it precluded testimony

4

concerning a victim's sexual proclivities and not false allegations. The court nonetheless granted

the prosecution's motion to restrict cross-examination, finding that defense counsel had failed to

provide any basis to show that the allegations were false besides P.M.'s history of hallucinating.

The transcript of the colloquy establishes that defense counsel made clear to the court the

potential importance of cross-examination concerning the other allegations of sexual abuse:

> [PROSECUTOR]: Your Honor, there's one motion I would like to make.
> I have an application under Criminal Procedure Law Section 60.42. It pertains to
> keeping the—the complainant should not be questioned about any other or prior
> sexual experience. In the records that we received there's some statements about
> the complainant being sexually assaulted in the past by family members. And I
> would ask that under 60.42 that nothing other than the sexual attack in this case be
> inquired about.
>
> THE COURT: What about that?
>
> [DEFENSE COUNSEL]: Well, I would oppose that application, your
> Honor. It's our position that these allegations are false. From reviewing the
> medical records, she made a similar allegation about someone else later the same
> year and she's also make similar allegations as to her father, her uncles and her
> cousins. And I think it shows a history and a pattern of making things up.
>
> THE COURT: Well, we have—if we follow that reasoning, then we have
> four people who had hallucinations. . . . Four people saw something happening.
> How it started out, I don't know. And they don't know how it started. All I do
> know is that from the—they are absolute liars?
>
> [DEFENSE COUNSEL]: Our position is that these two people were there
> together consentually [sic] doing drugs and that when these people came upon the
> scene and shined the lights upon her, she freaked out and started screaming rape
> when there was, in fact, no rape.
>
> THE COURT: How about the bruises? Was that consentual [sic] also?
>
> [DEFENSE COUNSEL]: Judge, according to her psychiatric records she
> has entertained thoughts about hurting herself in the past, and I would like to
> explore that. I think she could have injured herself or she could have been injured
> as he was trying to pull her away from these people whom the defendant thought
> were attacking him.
>
> THE COURT: The section you're referring to talks about the sexual
> proclivities of a person, the fact that she engages in sex, that . . .—her sex life.
> We're talking now about false allegations. And I don't think that's covered by
> that section.
>
> [PROSECUTOR]: Your Honor, I believe that it is covered by that section.
> And there is no—defense counsel has no good faith basis to assume that those

other allegations were not true. And I don't think that, at this point, they are relevant. If he had proof or some good faith basis that she had made any false claim in the past, then that might be relevant. But in this case any statement in her confidential psychiatric records that she had been sexually abused when she was a child by her father or by her uncles has no bearing on this case at all.

THE COURT: It hasn't, I agree with you.

[PROSECUTOR]: And I don't think—for defense counsel, without any good faith basis, to suggest that these allegations were false---

THE COURT: Is there anything in there that shows that they are false?

[DEFENSE COUNSEL]: She, apparently, has a history of hallucinating.

THE COURT: Fine, you can ask her about hallucinations.

[DEFENSE COUNSEL]: And my client tells me that the allegations against him are false. And I would like to ask her whether or not charges were ever filed against these people. And I think if she says no, I think that would also indicate that, perhaps, these allegations are false.

THE COURT: I'm going to grant [the prosecutor's] application.

[DEFENSE COUNSEL]: In addition, your Honor, along the same lines—

THE COURT: You can ask her about assaults, but you are not going to get into any sexual aspects of it.

Trial Tr. at 113–16.

Petitioner was convicted of sodomy in the first degree, attempted rape in the first degree, assault in the second degree, and criminal possession of a weapon in the fourth degree (two counts). He was sentenced to a total of 13-1/3 to 25 years in prison.

His conviction was affirmed by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied.

Petitioner filed a motion to vacate judgment. It was denied by the trial court. Leave to appeal to the Appellate Division was denied.

In his application for a writ of habeas corpus, petitioner claims that (1) the trial court improperly precluded cross-examination of the victim concerning allegations in her medical records that she suffered sexual assaults in unrelated sexual abuse cases; (2) the prosecutor made improper summation comments; and (3) he was improperly sentenced to consecutive terms of

6

imprisonment.

Respondent moved to dismiss the petition as time-barred. By previous order that motion was denied, petitioner having demonstrated that his psychiatric condition made timely filing impossible. Counsel was appointed to represent petitioner.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a

7

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, No. 01-2299, 2002 U.S. App. LEXIS 28137 (2d Cir. Aug. 1, 2003) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary*, No. 02-2463, 2003 U.S. App. LEXIS 16167, at *25 (2d Cir. Aug. 7, 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455

8

U.S. 509, 522 (1989). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y. 2000) (state's failure to raise exhaustion requirement does not waive the issue).

IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as

9

"guideposts" the following:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee v. Kemna*, 534 U.S. 362 (2002)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved. *See Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion*, No. 02-2683, 2003 U.S. App. LEXIS 13949 at *15 n.3 (2d Cir. July 11, 2003) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003)). This congeries of holdings leaves it an open

10

question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

V. Certificate of Appealability

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 123 S. Ct. 1029 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz*, No. 02-2320, 2003 U.S. App. LEXIS 14450, at *15 (2d Cir. July 18, 2003).

This opinion complies with *Miranda v. Bennett*, 322 F.3d. 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

VI. Analysis of Claims

All of petitioner's claims are exhausted. Unless otherwise noted below, each claim is reviewed under a *de novo* standard.

A

Petitioner first claims that the trial court improperly precluded cross-examination of the victim concerning allegations in her medical records that she suffered sexual assaults in unrelated sexual abuse cases. As noted above, there was a good-faith basis for belief by the defense that

11

she had accused her father, uncles and cousins—and at least one other person subsequent to the

incident involving petitioner—of sexual assault, but had brought no charges against any of them.

Petitioner's claim was rejected on the merits by the Appellate Division, which stated,

> The defendant's contention that his cross examination of the complainant
> was improperly curtailed is without merit. Although prior alleged sexual assault
> complaints do not fall within the proscriptive scope of CPL 60.42, it is not an
> improvident exercise of discretion for a trial court to restrict cross-examination on
> that topic, especially where, as here, the defendant provided no basis for his
> allegation that the prior complaints were false. Contrary to the defendant's
> contention, he was not prohibited from cross-examining the complainant
> regarding the facts underlying her conviction of sexual abuse.

*People v. Benn*, 623 N.Y.S.2d 634, 635 (App. Div. 1995) (citations omitted). The claim was

presented to the New York Court of Appeals and is therefore exhausted. Review proceeds under

the deferential standards of AEDPA.

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a

deprivation of due process, he must show that the error was so pervasive as to have denied him a

fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976). The standard is

"whether the erroneously admitted evidence, viewed objectively in light of the entire record

before the jury, was sufficiently material to provide the basis for conviction or to remove a

reasonable doubt that would have existed on the record without it. In short it must have been

'crucial, critical, highly significant.'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting

*Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir. 1982). This test applies post-AEDPA.

*See Wade v. Mantello*, No. 02-2359, slip op. at 13 (2d Cir. June 13, 2003).

In addition, the Confrontation Clause "provides two types of protection for a criminal

defendant: the right physically to face those who testify against him, and the right to conduct

12

cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). "The right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." *Id.* (citation omitted). Nonetheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Contrary to the argument of petitioner's habeas counsel, the trial court did not rest its ruling—precluding cross-examination about the complainant's previous accusations of rape—on the dictates of New York's Rape Shield Law. The trial court instead exercised its discretion to preclude the cross-examination because petitioner had failed to provide any basis to show that P.M.'s prior and subsequent allegations of sexual assault by persons other than petitioner were false.

Allowing defense counsel to question P.M. about other accusations would have been a reasonable course. The court could have limited inquiry to the simple questions: "Did you accuse so-and-so of sexual abuse," and "Was the claim false?" It could then have precluded further inquiry or extrinsic proof in order to avoid complicating the trial. It is not contested that there was a good-faith basis for the questions. Her admissions to hallucinations and paranoid behavior, as well as the fact that she seems to have accused a number of adult males of sexual assault without bringing charges against any of them, probably merited at least a hearing outside of the presence of the jury to determine whether there was any basis to the proposed, implied accusation that her previous sexual assault claims were false.

13

Although prior alleged rape complaints by the victim do not fall within the scope of New York's rape shield statute, New York state decisions have held that a trial court may exercise its discretion whether to disallow such evidence where there is insufficient basis to believe the prior claim was false. *See Grant v. Demskie*, 75 F. Supp. 2d 201, 221 (S.D.N.Y. 1999) (listing cases). The New York Court of Appeals has indicated, however, that a pattern of complaints could cast doubt on a particular allegation and therefore require the trial court to allow for sufficient cross-examination on the matter. *See People v. Mandel*, 401 N.E.2d 185, 187 (N.Y. 1979) (approving the preclusion of cross examination where "[t]here was no sufficient proof offered that the complaints were indeed false and no showing was made that the particulars of the complaints, the circumstances or manner of the alleged assaults or the currency of the complaints were such as to suggest a pattern casting substantial doubt on the validity of the charges made by the victim in this instance or were such as otherwise to indicate a significant probative relation to such charges").

In the instant case, the trial court's preclusion of the defense from asking any question concerning P.M.'s prior allegations of sexual abuse was an abuse of discretion that rises to the level of a constitutional violation. P.M. had made a series of bizarre accusations of sexual abuse by many adult male members of her family as well as by another man eight months after the incident for which petitioner was on trial. She had a history of drug use, schizophrenia, paranoia, hallucinations and delusional thinking. The Appellate Division's conclusion that petitioner provided no basis for his allegation that the prior complaints were false is an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The evidential hypothesis, taken with the other evidence, required no proof that the

14

accusations were false. The evidential hypothesis in the instant case is: If a person on numerous occasions has accused many relatives of sexual abuse without complaining to the police, and in addition suffers from paranoid delusions and been convicted of engaging in a bizarre sexual incident with a young relative, it is probable to some degree that the instant accusation is false or delusional. Most jurors would want to know this history. Given the other evidence, they might still convict, but there is a substantial probability that the jurors might have had a reasonable doubt about P.M.'s credibility and about petitioner's guilt if the trial court had not completely cut off this line of inquiry.

The fact that she had never filed charged against any of these men, in conjunction with her psychiatric and substance-abuse history, could have led a reasonable jury to draw a reasonable doubt as to the reliability of the instant allegation. The pattern of unverified accusations by a woman who was frequently hallucinatory and delusional could have been viewed by a jury as casting substantial doubt on the validity of the charges made in the instant case. It was both unnecessary and unrealistic to expect defense counsel to track down those men who had previously been accused by complainant in an effort to demonstrate their innocence. The trial court should, at a minimum, have allowed the jury to learn of the prior accusations.

Under the peculiar circumstances of the case at bar, it is unnecessary to determine what the burden of proof is for laying the foundation to ask such a question. *Cf. Kelly v. Meachum*, 950 F. Supp. 461, 471 (D. Conn. 1996) (suggesting that cross-examination of a complainant about prior false allegations of sexual assault requires a defendant to show, by a preponderance of the evidence, that (1) the earlier or later accusation or accusations were in fact made; (2) that the accusation or accusations were in fact false; and (3) that the evidence is more probative than

15

prejudicial (citing *Miller v. Nevada*, 779 P.2d 87, 90 (Nev. 1989))).

It would not have been necessary for the trial court to sanction a "mini-trial" on the issue of other accusations if P.M. had denied falsely making them. The defense could reasonably have been bound by the complainant's answer and precluded from introducing extrinsic evidence in support of its claim that her testimony was unreliable. *Compare Grant*, 75 F. Supp. 2d at 221 (noting that "there really was no way to prove fabrication without holding mini-trials on each allegation" of false accusations of sexual assault, and concluding that because a "habeas court is not an appeals court to review state trial court errors unless they are of constitutional dimension," it was unnecessary to "decide whether, in exercising discretion, it would have allowed this evidence if it were the trial judge, nor whether the trial judge abused his discretion as a matter of state law in excluding this evidence").

The Appellate Division's conclusion that petitioner's Due Process and Confrontation Clause rights were not violated by the preclusion of cross-examination of the complainant concerning prior allegations of sexual assault was contrary to and an unreasonable application of clearly established federal law as determined by the Supreme Court in *Pennsylvania v. Ritchie* and *United States v. Agurs*.

In order to be entitled to habeas relief, petitioner must further demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict," and that the error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted).

If the defense had been allowed to cross-examine P.M., a reasonable juror would have had sufficient information at his or her disposal to conclude that P.M. had made multiple

16

accusations of sexual abuse that were unfounded, and that someone who had exhibited a pattern of false accusations was likely to have falsely accused the defendant in the instant case.

It is a close call whether, in light of the evident physical trauma suffered by P.M., the Confrontation Clause error was harmless. The burden of persuasion is on the government, "meaning that if 'the matter is so evenly balanced that [the federal judge] feels himself in virtual equipoise as to the harmlessness of the error' the petitioner should prevail." *Lainfiesta v. Artuz,* 253 F.3d 151, 158 (2d Cir. 2001) (quoting *O'Neal v. McAninch,* 513 U.S. 432, 435 (1995)), *cert. denied, sub nom. Lainfiesta v. Greiner,* 122 S. Ct. 1611 (2002). Under the standard as articulated by the Court of Appeals for the Second Circuit, the constitutional error in the instant case was not harmless. Granting of the writ is warranted.

B

Petitioner also seems to complain that defense counsel was improperly precluded from cross-examining the complainant about the facts underlying her conviction for the sexual abuse of her four-year-old nephew. P.M. testified that, when she pled guilty to the crime, she told the court that she had placed the boy to her naked breast. Defense counsel sought to question her about another accusation in the indictment—that she had taken the boy's penis into her mouth—but was precluded by the court, which stated that only convictions and not accusations were relevant. The Appellate Division rejected this claim on the merits. It was presented to the New York Court of Appeals and is therefore exhausted.

The trial court's evidentiary ruling was arguably justified and, at any rate, did not deny petitioner a fair trial. The unproven details of the incident were of marginal value in assessing P.M.'s credibility concerning her accusations against petitioner. Habeas corpus relief on this

17

ground is not warranted.

C

Petitioner next claims that the prosecutor made improper summation comments. In particular, he complains that the prosecutor usurped the jury's fact-finding function by deployment of a "deliberately calculated summation which repeatedly set forth her belief in [petitioner's] guilt." Br. for Appellant at 32. This claim was raised on direct appeal and rejected by the Appellate Division as "either unpreserved for appellate review or meritless." The claim was not raised in petitioner's letter seeking leave to appeal to the New York Court of Appeals and therefore is technically unexhausted. It may nonetheless be deemed exhausted in this proceeding because petitioner would now be procedurally barred from raising the claim if he returned to state court. *See* McKinney's New York Rules of Court § 500.10(a) (litigant may file only one leave application with respect to each Appellate Division order); *Bossett v. Walker*, 41 F.3d 825, 828–29 (2d Cir. 1994) (if a state prisoner has not exhausted his state remedies with respect to a claim, but no longer has a state forum in which to raise the claim, the claim may be deemed exhausted but procedurally barred).

Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). Nonetheless, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (citing *DeChristoforo*, 416 U.S. at 643). Inquiry into the fundamental

18

fairness of a trial requires an examination of the effect of any misconduct within the context of the entire proceedings. *DeChristoforo*, 416 U.S. at 643. In order to view any prosecutorial misconduct in context, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted).

The prosecutorial comments about which petitioner complains were, for the most part, little more than a review of the evidence presented by the prosecution and an argument to the jury that the prosecution's witnesses were more credible than petitioner's. She did not state her belief that petitioner was guilty, except to the extent that she urged the jury to accept the state's theory of the case. Although the prosecutor's comments on petitioner's exercise of his right to a trial were arguably improper, *see* Trial Tr. at 282, the remarks did not deprive petitioner of a fair trial. The prosecutor may, arguably, have been overzealous in her closing statement, but defense counsel's failure to object to the comments about which petitioner now complains is indicative of their relative unimportance. Habeas corpus relief on this ground is not warranted.

D

Petitioner finally claims that he was improperly sentenced to consecutive terms of imprisonment. The Appellate Division rejected this claim on direct appeal, stating that the "defendant committed separate and distinct sexual acts so that the imposition of consecutive sentences was wholly appropriate." *Benn*, 623 N.Y.S.2d at 635. Review proceeds under the deferential standards of AEDPA. The claims was also presented to the New York Court of

19

Appeals and is therefore exhausted.

The assertion that a sentencing judge abused his or her discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). A challenge to the term of a sentence is not a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Federal courts have traditionally deferred to state legislature with respect to sentencing matters. *See Ewing v. California*, 123 S. Ct. 1179 (2003) (sentence of 25 years to life in prison for stealing three golf clubs by a recidivist not cruel and unusual); *Lockyer v. Andrade*, 123 S. Ct. 1166 (2003) (sentence of 25 years to life in prison for stealing $150-worth of videotapes not cruel and unusual).

Petitioner's convictions for sodomy and for attempted rape were premised on distinct acts that the trial court determined, as a factual matter, were not a single continuous assault. As such, New York law allows for the sentences to be imposed consecutively. *See People v. Rivera*, 588 N.Y.S.2d 391, 393 (App. Div. 1992); N.Y. Penal L. § 70.25. The trial court's factual finding is reasonable and has not been rebutted by clear and convincing evidence. Habeas corpus relief on this claim is not warranted.

VII. Conclusion

The petition for a writ of habeas corpus is granted based on petitioner's claim that his Due Process and Confrontation Clause rights were violated by the trial court's decision to preclude cross-examination of the complainant concerning alleged prior and subsequent false allegations of sexual abuse. The prisoner shall be released unless within sixty days the state

20

commences prosecution or takes other action appropriate in light of this decision. This decision is stayed until all appellate proceedings are completed and a final mandate is received by this court.

No certificate of appealability is granted with respect to petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner is reminded that he may seek a certificate of appealability on these claims from the Court of Appeals for the Second Circuit.

/S0 ORDERED.

Jack B. Weinstein
Senior District Judge

Dated:        December 3, 2003
              Brooklyn, NY

21